UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KHAMERYN FORTE, by and through his guardian ad litem SANDRA FORTE,<br><br>            Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>            Defendant. | No. ED CV 04-1605-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Sandra Forte ("plaintiff"), on behalf of her minor son Khameryn Forte ("Khameryn"), filed this action on January 12, 2005, seeking review of the Commissioner's denial of Khameryn's application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on February 14, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 20, 2005, that addresses their position concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

On December 2, 2002, Sandra Forte protectively filed an application for her minor son, Khameryn Forte, seeking Supplemental Security Income payments, alleging that Khameryn was disabled due to Hirschsprung's disease and anxiety. [Administrative Record ("AR") at 37-40, 42-43.] After the application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on March 1, 2004. [AR at 175-92.] Khameryn was almost twenty-one months old at that time. [AR at 179a.]

In an opinion issued on March 12, 2004, the ALJ found that Khameryn has not engaged in substantial gainful activity since the protective filing date. [AR at 18, 23.] The ALJ further found that Khameryn suffers from the severe impairment of Hirschsprung's disease status post laparoscopic pull-through surgery. [AR at 18, 23.] The ALJ next found that Khameryn's condition does not meet any of the "listed impairments." [AR at 20, 23.] Finally, the ALJ concluded that Khameryn does not have an impairment that is medically or functionally equivalent to a listed impairment. [AR at 20-23.] Supplemental Security Income benefits were thus denied.

Plaintiff, through counsel, filed a request with the Appeals Council for review of the ALJ's decision. On October 12, 2004, before any decision was issued, plaintiff submitted additional medical evidence which the Appeals Council made part of the record. [AR at 7, 157-73.] Plaintiff submitted further medical evidence on October 26, 2004. See Attachment to Joint Stipulation ("Attach."). There is no indication that the Appeals Council considered this second submission. On November 2, 2004, the Appeals Council advised that the ALJ's decision would stand as the final decision of the Commissioner in Khameryn's case. [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

2

evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATING DISABILITY IN A CHILD

Disability for children is determined in a somewhat different manner than disability for adults.  For a child to be disabled for the purpose of receiving benefits, he must suffer from a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which could be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000).  An impairment causes "marked and severe functional limitations" if it meets or equals an impairment described in the Listing of Impairments.  See 20 C.F.R § 416.924(d); Merrill, 224 F.3d at 1085.  "The claimant bears the burden of establishing a prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).

The regulations promulgated by the Social Security Administration establish a three-step sequential evaluation process to be followed in a child disability case.  See 20 C.F.R. § 416.924.  First, it must be determined whether the child claimant is involved in substantial gainful activity.  If so, there is no disability, and the claim is denied.  20 C.F.R. § 416.924(b).  If the child is not

engaged in substantial gainful activity (and most children are not), then it is determined whether the child claimant has a severe medically determinable impairment or combination of impairments. If not, there is no disability and the claim is denied. 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, then in the third and final step, it must be determined whether the impairment meets or medically or functionally equals in severity an impairment in the Listing of Impairments found at 20 C.F.R. § 404, Subpart P, App. 1 (the "Listing"). If the impairment meets or equals an impairment in the Listing, then it is presumed to cause "marked and severe functional limitations." Assuming that the 12-month duration period is also established, benefits are awarded. 20 C.F.R. § 416.924(d). See Smith v. Massanari, 139 F.Supp.2d 1128, 1132 (C.D. Cal. 2001).

Medical equivalence exists "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926(a). A comparison is made between "the symptoms, signs, and laboratory findings about [the claimant's] impairment(s), as shown in the medical evidence . . . , with the corresponding medical criteria shown for any listed impairment." Id.

In order for a severe impairment or combination of impairments to <u>functionally</u> equal the Listing, it must result in "marked" limitations in two "domains" of functioning, or an "extreme" limitation in one such domain. 20 C.F.R. § 416.926a(a).[1] A "marked" limitation is one where the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." It is a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." It is the rating given to "the worst limitations." 20 C.F.R. § 416.926a(e)(3).[2]

---

[1] The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(g)-(l). For each domain, various criteria are listed to determine the extent of a child's limitations caused by the impairment.

[2] The Court notes that some of the applicable regulations may have been amended since the ALJ issued the decision in this matter. It does not appear -- nor do the parties contend -- that

# V.

# **THE ALJ'S DECISION**

### A. THE EVIDENCE OF KHAMERYN'S IMPAIRMENT

Khameryn was born on June 5, 2002, weighing 4 pounds, 7 ounces. [AR at 96, 104, 109.] Soon after, Khameryn developed abdominal complications and underwent a battery of tests before Hirschsprung's disease was diagnosed.[3] [See AR at 77-81, 93-95.] On June 28, 2002, doctors performed a laparoscopic pull through operation on Khameryn to correct the problem. [AR at 74-76.] On July 4, 2002, he was discharged weighing 2.51 kg (5.5 pounds), and with a diagnosis of, inter alia, transient tachypnea, Hirschsprung's disease, and status post hyperbilirubinemia. [AR at 69-71.] By September 2002, Khameryn weighed over 12 pounds. [AR at 140.] In December 2002, although he was spitting up his food, his weight had reached 18.4 pounds. [Id.]

Khameryn was evaluated by Dr. Krystal Neely on March 13, 2003, when he was a little over nine months old. [AR at 142-45.] Upon examination, Dr. Neely noted moderate[4] abdominal distention, but overall found Khameryn to be "well-developed, well-nourished ... [and] in no acute distress." [AR at 144.] In Dr. Neely's opinion, Khameryn's functional assessment was age appropriate in the following areas: cognitive skills, communication skills, social skills, motor skills, concentration, pace and persistence, and personal behavior. [AR at 145.] At that time, Khameryn weighed 19 pounds, which Dr. Neely indicated to be in the 50th percentile for weight.[5]

---

use of the amended regulations would alter the ALJ's determination.

[3] Hirschsprung's disease is "an obstruction of the large intestine caused by inadequate motility (muscular movement of the bowel) that occurs as a congenital (present at birth) condition." See Medline Plus, Medical Encyclopedia at http://www.nlm.nih.gov/medlineplus/ency/article/01140.htm.

[4] Dr. Neely noted both moderate and significant abdominal distention. [AR at 144.] This inconsistency, however, is not material as even if Khameryn had significant distention, the evidence overall supports a finding of not disabled.

[5] According to the standard growth chart submitted by plaintiff in the Joint Stipulation, a nine month old infant in the 50th percentile for weight would weigh around 20.5 pounds. Meanwhile, an infant weighing 19 pounds would land in the 25th percentile range.

5

A "Childhood Disability Evaluation Form" was completed by a State agency physician, Dr. Samuel Grossman, on April 10, 2003. [AR at 147-52.] Although Dr. Grossman determined Khameryn has a severe impairment, he found that it does not meet, medically equal, or functionally equal the Listings. [AR at 147.] In particular, Dr. Grossman opined that Khameryn has no limitations with respect to the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for oneself. [AR at 149-50.] He found a "less than marked" limitation with respect to the domain of health and physical well-being, but opined that Khameryn "is doing OK in spite of some abdominal distention." [AR at 150.]

At the March 1, 2004, hearing, Khameryn's mother, Sandra Forte, testified that Khameryn must adhere to a special diet (i.e., no dairy and only soft foods) to enable proper digestion. [AR at 181.] According to plaintiff, Khameryn occasionally vomits and has painful bowel movements. [AR at 181-84.] Plaintiff described that Khameryn acts agitated and clutches his fists when he is in pain, and that she observes him exhibit this behavior around four or five times per day. [AR at 184.] At the time of the hearing, plaintiff reported that Khameryn weighed 25 pounds, which his doctor said was a "good" weight considering his overall small size.[6] [AR at 185.] Khameryn's mother also testified that he is bloated "all the time," has an "extended" stomach, and sleeps frequently. [AR at 186-88.]

As described supra, the ALJ issued his unfavorable decision on March 12, 2004. In particular, the ALJ found that Khameryn has a "less than 'marked'" limitation in the domain of health and physical well-being. [AR at 22.] In making this finding, the ALJ noted that despite the fact that Khameryn often throws up his food, has abdominal distention, and experiences painful bowel movements, he "appears to be growing and developing normally" and that his mother "does not appear to have had to take [him] to the hospital on an emergent basis due to his Hirschprung's disease." [Id.] According to the ALJ, the child had no other limitations in any of the other domains.

---

[6] According to the standard growth chart, it appears that a weight of 25 pounds for a 21 month old child would fall in the 25th percentile range.

On October 12, 2004, plaintiff submitted additional medical records from Loma Linda University Medical Center covering Khameryn's treatment from February 10, 2004, through July 28, 2004. [AR at 157.] Pursuant to the November 2, 2004, Order of the Appeals Council, this evidence was added to the record. [AR at 7.] These records show that in February 2004, Khameryn was treated for conjunctivitis, and that in July 2004, he was treated for the following symptoms: intermittent vomiting, diarrhea, and stomach pain. [AR at 165-70.] On July 23, 2004, he weighed 26 pounds. [AR at 165.] On July 25, 2004, Khameryn was evaluated by a doctor and described as "alert and oriented, [and] somewhat shy but interacted well with [his] parents." [AR at 168.] His abdomen was soft, nontender, not distended, and there was no organomegaly. [AR at 169.] Although he was diagnosed with acute gastroenteritis, his lab tests and KUB study returned normal results, and he was observed tolerating food and liquids without problem. [AR at 170.] The notes indicate that his parent declined to have a urinalysis test conducted because Khameryn was "looking so well they [were] ready to take him home." [AR at 169.]

On October 26, 2004, plaintiff submitted a second packet of additional medical evidence to the Appeals Council. [See Attach.][7] These belated records from Children's Hospital Los Angeles relate to Khameryn's treatment during the time period March 31, 2003, through August 12, 2004.

According to these records, Khameryn was treated on January 16, 2003, for vomiting and trouble breathing while sleeping. At that time, he weighed 8.5 kg (18.7 pounds). [Attach. at 38.] Khameryn was treated on March 17, 2003, for vomiting. [Attach. at 35.] He weighed 8.8 kg (19.4 pounds). [Id.] On March 31, 2003, he was treated again for complaints of persistent vomiting. [Attach. at 5.] He weighed 8.2 kg (18 pounds). [Attach. at 6.] While in the hospital, Khameryn tolerated his feedings, but suffered from occasional vomiting. Mild gastroesophageal reflux

---

[7] The Attachment has no page numbers. Accordingly, the Court has labeled the first page following plaintiff's October 26, 2004, letter (i.e., the standard growth chart) as page one and numbered the subsequent pages accordingly.

1  disease[8] was noted. [Attach. at 9.] An upper G.I. series and small bowel follow through taken on
2  April 1, 2003, returned negative results. [Attach. at 11.]

3  On September 4, 2003, Khameryn weighed in at 10.46 kg (22.9 pounds). [Attach. at 22.]
4  Two months later, in November 2003, Khameryn weighed 10.87 kg (23.9 pounds), and it was
5  noted, with respect to development, that he climbs, runs, and says words. [Attach. at 20.] The
6  following month, December 2003, Khameryn was seen again at Children's Hospital. [Attach. at
7  26.] The related treating note indicates he "[had] been doing well since seen" in April of 2003
8  despite continued episodes of vomiting and spitting up, and that he weighed 11.24 kg (24.7
9  pounds). [Id.]

10  In February 2004, Khameryn was evaluated and found to be, at 11.5 kg (25.3 pounds),
11  "growing well" and that his GERD was "doing well." [Attach. at 18-19.] With respect to
12  development, his doctor noted that he was walking, running, jumping, and feeding himself.
13  [Attach. at 18.] In March 2004, Khameryn's weight was again at 11.5 kg, and it was noted that he
14  "[had] been doing well" and was able to eat well with no vomiting. [Attach. at 25.] In June 2004,
15  Khameryn weighed 11.7 kg (25.7 pounds), his GERD was "doing well," and it was reported that
16  he was running, walking, saying simple words, and feeding himself. [Attach. at 16.] Later, on
17  August 12, 2004, it was noted that Khameryn had been doing well since he was treated at Loma
18  Linda the month prior for vomiting and diarrhea. [Attach. at 24.] His abdomen was soft and
19  nontender, and he weighed around 11.9 kg (26.2 pounds). The doctor commented, however, that
20  Khameryn had "poor weight gain." [Id.]

21  After plaintiff submitted the above records, the Appeals Council issued its denial on
22  November 2, 2004. [AR at 4-6.] Although the documents from Loma Linda were officially added
23  to the record by the Appeals Council, there is no indication from the Appeals Council's denial that
24  the late documents from Los Angeles Children's Hospital were considered.

---

[8] "Gastroesophageal reflux disease (GERD) is a condition in which food or liquid travels from the stomach back up into the esophagus (the tube from the mouth to the stomach)." See Medline Plus, Medical Encyclopedia at http://www.nlm.nih.gov/medlineplus/ency/article/000265.htm.

**B.     REMAND IS NOT WARRANTED BASED ON THE NEW EVIDENCE**

Plaintiff asserts that the severity of Khameryn's Hirschsprung's disease was not properly evaluated. Joint Stip. at 3. According to plaintiff, the new evidence submitted to the Appeals Council on October 26, 2004, is material and should be considered because it shows that Khameryn has failed to thrive and gain weight. Id. at 4-5. Thus, plaintiff argues, Khameryn's impairment should be found to be functionally equivalent to a listing, such as Listing 105.08 (malnutrition), because he has experienced significant percentile drops in weight (25 to 50 percentiles) as he has gotten older. Id. at 5-6. For the reasons set forth below, the Court disagrees.

"[I]n determining whether to remand a case in light of new evidence, the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). For new evidence to be material, it "must bear directly and substantially on the matter in dispute." Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984). The materiality requirement is satisfied and remand warranted "only where there is a *reasonable possibility* that the new evidence would have changed the outcome" of the earlier proceeding had the information been offered. See Booz v. Secretary of Health & Human Serv., 734 F.2d 1378, 1380 (9th Cir.1983) (emphasis in original). Good cause is shown if the "[n]ew information surfaces after the ... final decision [is issued] and the claimant could not have obtained that evidence at the time of the administrative proceeding." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985). When there is no prejudice to the Commissioner, the good cause requirement is often liberally applied. Burton, 724 F.2d at 1417-18.

/
/
/
/
/
/

The Court has reviewed the new evidence[9] and, taking into the consideration the remainder of the record, concludes that it does not meet the materiality requirement. As summarized above, the new evidence establishes that Khameryn suffers from intermittent episodes of gastrointestinal problems. For example, in both January and March 2003, he was treated for persistent vomiting, but was ultimately able to generally tolerate his feedings. [Attach. at 5-6, 38.] His weight in January 2003 was 18.7 pounds which, according to the standard growth chart submitted by plaintiff, fell in the 50th percentile for an infant of seven months, Khameryn's age at that time.

According to the new evidence, for the period April 2003 until July 2004, his doctors considered him to be "doing well," and noted that his development included, inter alia, running, jumping, saying words, and feeding himself. [See Attach. at 11, 16, 18-19, 25.] The Court observes that, according to the standard growth chart, plaintiff's weight of 22.9 pounds in September 2003 (at fifteen months old) was around the 25th percentile; his weight of 25.3 pounds in February 2004 (at twenty months old) was between the 25th and 50th percentiles; and his weight of 25.7 pounds in June 2004 (at twenty-four months old) was around the 25th percentile.[10] In August 2004, at 26 months old, Khameryn weighed 26.2 pounds -- again equivalent to just under the 25th percentile. [Attach. at 24.]

Taking into consideration the history of Khameryn's various weights and corresponding percentiles, it is evident that, while his weight gain may be slow, it has nevertheless been fairly steady. Although at one point Khameryn was in the 50th percentile for weight, his weight hovered

---

[9] Plaintiff premises the argument for remand on the alleged materiality of the evidence submitted on October 26, 2004. It does not appear that plaintiff is disputing the Appeals Council's consideration and rejection of the evidence submitted on October 12, 2004. [See AR at 4-6.] Accordingly, for the purposes of this Opinion, the Court limits its analysis to the October 26, 2004, evidence. In any event, the Court has reviewed the October 12, 2004, evidence as well (see supra at 7), and determines that the Appeals Council's denial was proper. The records relating to the October 12, 2004, submission fail to establish that Khameryn suffers from a disabling condition.

[10] The Court also observes that in July 2004, Khameryn was treated at Loma Linda for vomiting and diarrhea and quickly recovered in order to adequately tolerate food and liquids. [AR at 165-70.] On July 23, 2004, his weight was 26 pounds -- equivalent to just under the 25th percentile. In addition, his lab results at that time were normal. [AR at 170.]

1    around the 25th percentile from September 2003 to August 2004.  During that same period, his
2    doctors commented on numerous occasions that he was "doing well" despite intermittent episodes
3    of vomiting  -- which the Court takes as a strong indication his growth was not severely impacted
4    by his condition.  Although one doctor commented in August 2004 that Khameryn had "poor
5    weight gain," the Court is not persuaded that, based on this comment, there is a reasonable
6    possibility the ALJ's decision would have been any different if it had been considered.  See Booz,
7    734 F.2d at 1380.  A closer look at that same treating note shows that there were "no new
8    problems," and that Khameryn had been doing well since the month prior, when he was treated
9    at Loma Linda for vomiting.  [Attach. at 24.]  Additionally, there were no findings or abnormal lab
10   results associated with this particular treating note to show any severe and disabling problem.

11          As plaintiff concedes, under Listing 105.08 for malnutrition, low weight or a drop in weight
12   is not enough to be considered disabled.  Instead, Listing 105.08 requires both a drop of 15
13   percentiles of weight which persists, as well as other findings regarding stool fat excretions, serum
14   levels, or hematocrit levels.  Thus, even if Khameryn were found to meet the weight percentile
15   drop requirement, he does not satisfy the other requisite findings to meet or medically equal that
16   listing.

17          With respect to functional equivalency, even if the ALJ considered the new evidence,
18   plaintiff has failed to establish how there is a reasonable possibility that Khameryn would be found
19   to have "marked" limitations in at least two domains of functioning, or an "extreme" limitation in
20   at least one domain as, overall, the new evidence shows that Khameryn has for the most part
21   stayed around the 25th percentile for weight, and exhibits normal physical functioning and social
22   development. The ALJ observed that Khameryn experiences vomiting, abdominal distention, and
23   painful bowel movements.  There is nothing in the new evidence that shows the problem has
24   become significantly worse to rise to the level of a "severe" limitation with respect to the health
25   and physical well-being domain.  Although Khameryn may not be gaining weight at a rapid pace,
26   his doctor's single comment of "poor weight gain" without other abnormal findings is not enough,
27
28

for Social Security purposes, to substantiate a finding of disability. Accordingly, the new evidence is not sufficiently material to warrant remand.[11]

Plaintiff further urges in the Joint Stipulation that pursuant to <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1014 (9th Cir. 2003), remand is necessary because consultation with a medical expert is in order. Joint Stip. at 6. In <u>Howard</u>, the Ninth Circuit interpreted 42 U.S.C. § 1382c(a)(3)(I) to mean "that the ALJ is required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record." <u>Howard</u>, 341 F.3d at 1014. In response to this holding, Acquiescence Ruling 04-1(9) was published on April 26, 2004, which explains that, to satisfy this requirement, the ALJ may rely on a case evaluation made by a State agency medical consultant that is already in the record, and that the record must include the evidence of the consultant's qualifications. According to the Ruling, "the ALJ ... must ensure that the decision explains how the State agency medical ... consultant's evaluation was considered." <u>See</u> Acquiescence Ruling 04-1(9).

Here, the record contains a "Childhood Disability Evaluation Form" prepared by consulting State agency physician Dr. Grossman. [AR at 147-52.] Defendant asserts that the evidence shows Dr. Grossman is a surgeon, and therefore qualified to assess Khameryn's case because surgery was performed to correct the Hirschsprung's disease.[12] Joint Stip. at 8, 11-12. Plaintiff does not dispute Dr. Grossman's qualifications, but argues that due to the dramatic change in Khameryn's condition after the ALJ's decision was issued, remand is warranted to allow a consultation with a medical expert. <u>Id.</u> at 13.

---

[11] The medical records plaintiff submitted to the Appeals Council on October 26, 2004, range in date from March 2003 to August 2004. Plaintiff offers no explanation for the delay in submitting them. Considering that a substantial portion of the new evidence relates to treatment Khameryn received before the ALJ's decision was issued on March 12, 2004, and absent any reasonable excuse from plaintiff for the belated submission, the Court concludes that plaintiff has also failed to meet the good cause requirement.

[12] Dr. Grossman's medical specialty code is "45." Pursuant to the Program Operations Manual System ("POMS") DI 26510.090 B, this code indicates surgery.

The Court has considered the positions of both parties, and determines that remand is not necessary for further consultation with a medical expert.  The ALJ already reasonably complied with Howard by having Dr. Grossman review Khameryn's case.  It appears from the record that Dr. Grossman is a surgeon, and therefore qualified to assess Khameryn's condition due to the laparoscopic pull through operation that was performed.  While the ALJ may not have explicitly accorded weight to Dr. Grossman's opinion, the error is harmless as the doctor's opinion is consistent with the ALJ's findings regarding Khameryn's less than marked limitation in the domain of health and physical well-being.  In addition, although Dr. Grossman ultimately did not review every record in Khameryn's case due to the belated submissions, because the new evidence is not material, there is no cause for remand.

## VI.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 11, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE